IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------------X

SAMANTHA BARBASH,

                            Plaintiff,                              Civil Action No.: 20-123

                                                                  VERIFIED COMPLAINT
                                                                   AND JURY DEMAND

    v.

STX FINANCING, LLC (dba STX ENTERTAINMENT), a Delaware
limited liability company, GLORIA SANCHEZ PRODUCTIONS, INC.,
a California corporation, NUYORICAN PRODUCTIONS, INC.,
a California corporation, POLE SISTERS LLC, a California
limited liability company, and JOHN and JANE DOES 1-10,

                               Defendants,

-------------------------------------------------------------------------------------X

      Plaintiff, SAMANTHA BARBASH, by its attorneys, Law Office of Bruno V. Gioffre, Jr.,

PLLC, alleges for its complaint upon information and belief as follows:

## INTRODUCTION & NATURE OF THE ACTION

1. This matter arises out of Defendants' portrayal and exploitation of Plaintiff's character and likeness in the motion picture entitled, "Hustlers" (hereinafter referred to as the "film"). Accordingly, this action seeks injunctive relief, as well as monetary damages for Defendants' violation of New York Civil Rights Law §50 and 51. In addition, this action seeks damages for Defendants' defamation of Plaintiff's character.

## PARTIES

2. Plaintiff, Samantha Barbash, is a resident of the State of New York, County of Queens, residing within the jurisdiction of the Eastern District of New York (hereinafter "Ms. Barbash" or "Plaintiff").

3. Upon information and belief, Defendant, STX FINANCING, LLC (d/b/a STX ENTERTAINMENT), was and still is a Delaware Limited Liability Company with its principal office in Burbank, California (hereinafter "STX").

4. Upon information and belief, Defendant GLORIA SANCHEZ PRODUCTIONS, INC., is a California corporation with its principal office in Los Angeles, California (hereinafter "GS Productions").

5. Upon information and belief, Defendant NYUORICAN PRODUCTIONS, INC., is a California corporation with its principal office in Santa Monica, California (hereinafter "NP Inc.").

6. Upon information and belief, Defendant POLE SISTERS LLC, is a California Limited Liability Company with its principal office located in Burbank, California (hereinafter "Pole Sisters").

7. Upon information and belief, Defendants JOHN and JANE DOES 1-10 are individuals, partnerships or corporations whose existence Plaintiff asserts on information and belief but whose exact identity she has been unable to discover.

8. Upon information and belief, each and every above mentioned Defendant, collectively and/or individually, is and/or was engaged in preparation, publication, and wide-spread release, distribution and showing, within New York State and elsewhere, of the motion picture entitled "Hustlers", as well as the advertisement and promotional material in connection therewith.

JURISDICTION AND VENUE

9.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.
    §1332 because the amount in controversy exceeds $75,000.00, exclusive of interests and
    costs, and complete diversity of citizenship exists among the parties.

10. Venue is proper in this Court pursuant to §28 U.S.C. §1391(b)(2) because a substantial part
    of the events or omission giving rise to Plaintiff's claim occurred in this District, including
    but not limited to, upon information and belief, the filming/production of a number of
    scenes of the film.

ALLEGATIONS COMMON TO ALL CLAIMS
AND FOR A FIRST AND SECOND CAUSE OF ACTION IN VIOLATION OF SECTION 50
AND 51 OF THE CIVIL RIGHTS LAW OF STATE OF NEW YORK

11. Upon information and belief, Defendants, STX, GS Productions, NP Inc., and Pole Sisters,
    produced, developed, distributed, licensed, and/or financed the motion picture entitled
    "Hustlers".

12. The film is described as inspired by a true story based on the New York magazine's 2015
    article "The Hustlers at Scores" by Jessica Pressler, which in turn is based on the real life
    events of Ms. Barbash.

13. Ms. Barbash was an adult entertainment host at Score's Gentlemen's Club in Chelsea, New
    York and Hustlers Club in Manhattan. In 2017 Ms. Barbash plead guilty to conspiracy,
    assault and grand larceny in exchange for five years probation.

14. Accordingly, Defendants attempted to obtain a consent and waiver from Ms. Barbash for
    the production of the film and their ultimate portrayal of Plaintiff therein. However, Ms.
    Barbash refused to give her consent or waive any of her privacy rights.

15. Nonetheless, with blatant disregard for their lack of authority and/or consent, Defendants proceeded to exploit Ms. Barbash's likeness and character for the film and the promotion thereof.

16. The film depicts Ms. Barbash, played by Jennifer Lopez ("JLO"), as the ringleader of a group of adult dancers who drugged their patrons and stole exuberant amounts of money from them while in their incapacitated state.

17. Defendants utilized the likeness and character of Plaintiff in the film and in the marketing thereof through calculated efforts to ensure the public *knew* that the character played by JLO was, in-fact, Ms. Barbash.

18. Defendants did not take caution to protect the rights of Ms. Barbash by creating a fictionalized character, or by creating a composite of characters to render JLO's character a new fictitious one; rather, they engaged in a systematic effort to make it well-known that JLO was playing Ms. Barbash.

19. Defendants engaged in collaborative marketing and promotional efforts, including interviews by JLO leading up to the premier of the film.

20. During said marketing campaign, Defendants promoted the film by deliberately discussing the real-life events that transpired, the city where the acts took place, the exact place of Ms. Barbash's employment, her plea information, legal proceedings and other information that made Ms. Barbash's identity instantly connected to the film.

21. Defendants went to great efforts to intentionally reveal to the public that JLO was playing Ms. Barbash, possibly for the film's or the character's credibility, but surely for their own commercial gain.

22. In fact, Defendants so effectively conveyed the message that the film and star of the film were to portray Ms. Barbash, and not some fictionalized or composite character thereof, that such portrayal was heavily covered by the media and gained so much attention to make first page news in numerous periodicals, including the New York Post.

23. As a direct and intended consequence of Defendants' promotion and marketing of the film, Ms. Barbash's name became heavily entrenched in the film's media's coverage, long before the movie ever premiered.

24. Defendants went to such extents to make certain the public knew JLO was playing Ms. Barbash, that they had JLO recreate Ms. Barbash's exact pose following her criminal proceeding, which previously graced the pages of the New York Post in 2017. In said pose Plaintiff was photographed giving the finger to reporters while walking out of Court with her sunglasses on following her plea. Defendants then used said recreated photo in the film and the promotion of the film, further alleviating any doubt that JLO's character was unmistakably identifiable as Ms. Barbash.

25. Then, in contravention with prior requests from Plaintiff, on or about September 13, 2019, Defendants released the film Hustlers.

26. On or about September 13, 2019, and thereafter, Defendants, themselves and through their agents, and others, have knowingly caused the preparation, publication and wide-spread release and showing within New York state and elsewhere of the motion picture "Hustlers", that includes Ms. Barbash's image, likeness, and/or characterization.

27. "Hustlers" has appeared and, upon information and belief, is still appearing in various movie theaters within and outside the United States since September 13, 2019.

28. Upon information and belief, "Hustlers" will be distributed world-wide via DVD, Blu-ray, and various other mediums.

29. Defendants' negligent or intentional exploitation of Ms. Barbash's image, likeness, and characterization in the film, and the promotion and marketing thereof, has caused Plaintiff to be identified in connection with Defendants' motion picture.

30. Ms. Barbash has not given her consent to, or in any way authorized the use of her image, likeness, and/or characterization in the film.

31. Thus, Defendants used Ms. Barbash's identity, likeness, and characterization for the promotion and commercial exploitation of the film without Plaintiff's consent and authorization.

32. Defendants JOHN and JANE DOE 1-10, have knowingly participated, aided, and conspired with the other named Defendants to violate Plaintiff's privacy rights.

33. The use by Defendants of Plaintiff's personality for advertising purposes and for purposes of trade and commercial benefits was without the consent, written or oral, of Ms. Barbash or anyone authorized by her to give such consent, was entirely unauthorized, and constitutes a violation of Section 50 and 51 of the Civil Rights Law of State of New York.

34. The Defendants, by knowingly using a likeness of, and drawing direct connection to, Ms. Barbash for advertising purposes, and for purposes of trade and commercial benefit was without the consent, written or oral, of Plaintiff or anyone authorized by her to give such consent, was entirely unauthorized, and constitutes a violation of Plaintiff's New York Privacy Rights Section 50 and 51.

35. All or substantial portions of the preparation, publication, filming, and distribution of the motion picture occurred within New York state, as well as other states.

36. Defendants have acted knowingly, willfully, recklessly, and in bad faith.

37. Defendants, and their agents, have committed tortious acts within the State of New York, which are causing injury to Ms. Barbash.

38. By reason of the foregoing and pursuant to Section 50 and 51 of the Civil Rights Law of the State of New York, Plaintiff demands (a) an injunction enjoining defendants from any further unauthorized reproduction, publication, distribution, or other use or exploitation of the advertisement and of any other advertisement containing Plaintiff's image, likeness, characterization, (b) an injunction directing defendants to recall, assemble, and turn over to Plaintiff all copies of the advertisement and of any other advertisement containing Plaintiff's image, likeness, or characterization, including all prints, negatives, and other paraphernalia from which advertisement or any portion thereof that includes a Plaintiff's image, likeness, or characterization be produced; and (c) the Defendants are further jointly and severally liable to Plaintiff for compensatory and exemplary damages.

39. On account of the foregoing, Plaintiff seeks damages in an amount to be determined at trial but in no event less than $20,000,000.00

## AS AND FOR A THIRD CAUSE OF ACTION FOR DEFAMATION

40. Plaintiff repeats, reiterates, and realleges paragraphs 1-40, as if fully set forth herein.

41. On account of Defendants' aforementioned marketing ploy to gain credibility for the film, Ms. Barbash began receiving many calls and inquiries concerning the film, and not only by media companies but also by people with whom she worked, her family, her friends, and from others in the community.

42. As Defendants' through their own conduct, negligent or intentional, made JLO's character readily identifiable to the public as Ms. Barbash, any and all actions and statements made by JLO in the film became attributable to and/or about Ms. Barbash.

43. While the amount of accurate factual details presented within the film are sufficient to unequivocally identify JLO's character as Ms. Barbash, Defendants' made statements and created scenes of and concerning Ms. Barbash in a grossly irresponsible manner, specifically those portraying her character as using and manufacturing illegal substances in her home where she lived with her child.

44. The aforementioned statements and depictions contained in the motion picture were widely published, within the United States and outside the country, as part of the motion picture and not privileged in any manner.

45. The aforementioned statements are *libelous per se* because they involve the commission of crimes and/or tend to injure Plaintiff in her current business network as a beauty salon owner, and in the eyes of her community.  The outrageous drug activities, especially those engaged in within the home of her minor child, would be offensive to any common person and are necessarily injurious to the reputation of Plaintiff.

46. The Defendants acted with malice, gross and/or reckless disregard as to the truth or falsity of the afore-referenced statements.

47. Plaintiff never engaged in any such conduct.

48. By reason of the foregoing, the statements contained in "Hustlers" have permanently damaged Plaintiff's reputation in her personal and professional community. Anyone who views the film or any of its promotional material will believe Plaintiff to be an individual

of little to no moral or ethical values, devoid of any loyalty to her colleagues, under the influence of hard drugs, and with misandrist tendencies.

49. On account of the foregoing, Plaintiff seeks damages in an amount to be determined at trial but in no event less than $20,000,000.00

<u>JURY DEMAND</u>

50. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff SAMANTHA BARBASH demands a trial by jury.

**WHEREFORE**, Plaintiff SAMANTHA BARBASH demands judgment against the Defendants, STX FINANCING, LLC (dba STX ENTERTAINMENT), GLORIA SANCHEZ PRODUCTIONS, INC., NUYORICAN PRODUCTIONS, INC., POLE SISTERS LLC and JOHN and JANE DOES 1-10, jointly and severally for:

a. A permanent injunction, Pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants, and each of them, their respective officers, agents, servants, employees and attorneys, and all other persons in concert or participation with them, from reproduction, publishing, distributing, or otherwise using or exploiting the motion picture entitled "Hustlers" or any advertisement containing the Plaintiff's image, likeness or characterization.

b. An injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, directing Defendants to recall, assemble and turn over to Plaintiff all copies of the motion picture entitled "Hustlers" and any advertisement and promotional material containing Plaintiff's image, likeness or characterization, including all prints, negatives, and other paraphernalia that includes Plaintiff's image, likeness, or characterization produced;

**c.** An injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, directing Defendants to recall, assemble and turn over to Plaintiff all copies of the motion picture "Hustlers" and any advertisement containing a likeness of Plaintiff, and all prints, plates, negatives and other photographic paraphernalia from which the motion picture "Hustlers" or any portion thereof which includes a likeness or characterization of Plaintiff can be produced;

**d.** An injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants preliminarily and permanently from reproducing, publishing, distributing, or otherwise using or exploiting the motion picture entitled "Hustlers" or any advertisement containing the characterization or likeness of Plaintiff;

**e.** An Order requiring Defendants to account to Plaintiffs for all proceeds derived from their wrongful conduct;

**f.** An amount to be determined at trial, but in no event less than TWENTY MILLION ($20,000,000.00) U.S. DOLLARS awarded against all Defendants, jointly and severally for compensatory damages;

**g.** An amount to be determined at trial, but in no event less than TWENTY MILLION ($20,000,000.00) U.S. DOLLARS, awarded against all Defendants, jointly and severally for exemplary damages.

**h.** An award against Defendants, jointly and severally, for the interest, the costs and disbursements, and attorney's fees of this action, and such other and further relief, as the Court may seem just and proper.

Dated: White Plains, New York

January 6, 2020

LAW OFFICE OF BRUNO V. GIOFFRE, JR., PLLC


By:  /  BRUNO V. GIOFFRE, JR. ESQ. (BG-7598)

STEPHEN A. FLOREK III, ESQ. (SF-0093)

Attorneys for Plaintiff

2 Westchester Park Drive - Suite 205

White Plains, New York 10604

(914) 481-8900

To:


STX FINANCING, LLC (dba STX ENTERTAINMENT)

3900 W Alameda Avenue

Burbank, CA 91505


GLORIA SANCHEZ PRODUCTIONS INC.

4929 Wilshire Blvd., Suite 500

Los Angeles, CA 90010


NUYORICAN PRODUCTIONS, INC.

1100 Glendon Avenue

Los Angeles, CA 90024


POLE SISTERS, LLC

3900 W Alameda Avenue, Floor 32

Burbank, CA 91505

# **VERIFICATION**

STATE OF NEW YORK       )
                                 ) SS:
COUNTY OF WESTCHESTER   )

The undersigned, an attorney admitted to practice in the Courts of New York State including the United States District Court, Southern District of New York, states:

Deponent is a member of the firm Law Office of Bruno V. Gioffre, Jr., PLLC and Counsel for Plaintiff Samantha Barbash in the within action; deponent has read the foregoing Verified Complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to matters therein state to be alleged upon information and belief, and that as to those matters deponent believes them to be true. This Verification is made by deponent and not by Plaintiff because Plaintiff's residence is located outside of the County of Westchester where the deponent maintains his office.

Dated: January 7, 2020
       White Plains, New York

                                        BRUNO V. GIOFFRE, JR., ESQ.