UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMANTHA BARBASH,

             Plaintiff,

vs.

STX FINANCING, LLC (dba STX ENTERTAINMENT), *et al.*,

             Defendants.

Case No. 20-cv-00123-DLC

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**Ballard Spahr LLP**
1675 Broadway, 19th Floor
New York, NY  10019-5820

*Attorneys for Defendants STX Financing, LLC, Gloria Sanchez Productions, Inc., Nuyorican Productions, Inc., and Pole Sisters LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

I. PLAINTIFF'S SECTION 51 CLAIMS FAIL AS A MATTER OF LAW ..........................1

    A. Defendants Do Not Use A "Recognizable Likeness" Of Plaintiff ...........................1

    B. *Hustlers* Is A Work Of Fiction And Thus Not Within Section 51's Reach.........................................................................................................................3

    C. The Newsworthiness Exception Applies To *Hustlers* ..............................................4

II. PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW .....................5

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Actos End-Payor Antitrust Litigation*,
  848 F.3d 89 (2d Cir. 2017)..................................................................................................10

*Ali v. Playgirl, Inc.*,
  447 F. Supp. 723 (S.D.N.Y. 1978) ........................................................................................2

*Allen v. National Video, Inc.*,
  610 F. Supp. 612 (S.D.N.Y. 1985) ........................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................................9

*AT&T Corp. v. Syniverse Technologies, Inc.*,
  2014 U.S. Dist. LEXIS 125256 (S.D.N.Y. Sep. 8, 2014).......................................................6

*Birkenfeld v. UBS AG*,
  72 A.D.3d 566 (1st Dep't 2019) ............................................................................................7

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015)...................................................................................................7

*Burck v. Mars, Inc.*,
  571 F. Supp. 2d 446 (S.D.N.Y. 2008)....................................................................................3

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
  38 N.Y.2d 196 (1975) ........................................................................................................8, 9

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014)...................................................................................................6

*Costanza v. Seinfeld*,
  279 A.D.2d 255 (1st Dep't 2001) ..........................................................................................3

*Feche v. Viacom International, Inc.*,
  233 A.D.2d 125 (1st Dep't 1996) ..........................................................................................6

*Frascatore v. Blake*,
  344 F. Supp. 3d 481 (S.D.N.Y. 2018)....................................................................................7

*Gertz v. Robert Welch Inc.*,
  418 U.S. 323 (1974)...............................................................................................................7

*Goldman v. Reddington*,
   417 F. Supp. 3d 163 (E.D.N.Y. 2019) ................................................................................9

*Greene v. Paramount Pictures Corp.*,
   138 F. Supp. 3d 226 (E.D.N.Y. 2015) ............................................................................1, 8

*Greene v. Paramount Pictures Corp.*,
   340 F. Supp. 3d 161, 169 (E.D.N.Y. 2018) ........................................................................8

*Hampton v. Guare*,
   195 A.D.2d 366 (1st Dep't 1993) .......................................................................................4

*Kirch v. Liberty Media Corp.*,
   No. 04 Civ. 667 (NRB), 2004 U.S. Dist. LEXIS 19228 (S.D.N.Y. Sep. 24,
   2004) ..................................................................................................................................6

*Loftus v. Greenwich Lithographing Co.*,
   192 A.D. 251 (1st Dep't 1920) ...........................................................................................2

*Lohan v. Take-Two Interactive Software, Inc.*,
   31 N.Y.3d 111 (2018) ........................................................................................................3

*Messenger v. Gruner + Jahr Printing & Publishing*,
   208 F.3d 122 (2d Cir. 2000)............................................................................................4, 5

*Messenger v. Gruner + Jahr Printing & Publishing*,
   94 N.Y.2d 436 (2000) ........................................................................................................5

*Mitre Sports International Ltd. v. HBO, Inc.*,
   22 F. Supp. 3d 240 (S.D.N.Y. 2014)...................................................................................9

*Onassis v. Christian Dior-New York, Inc.*,
   472 N.Y.S.2d 254 (Sup. Ct. N.Y. Cty. 1984) .................................................................2, 3

*Pollnow v. Poughkeepsie Newspapers, Inc.*,
   107 A.D.2d 10 (2nd Dep't 1985) ........................................................................................8

*Spahn v. Julian Messner, Inc.*,
   18 N.Y.2d 324 (1966) ........................................................................................................5

*Three Amigos SJL Restaurant, Inc. v. CBS News Inc.*,
   28 N.Y.3d 82 (2016) ..........................................................................................................6

*Toscani v. Hersey*,
   271 A.D. 445 (1st Dep't 1946) ...........................................................................................3

*Welch v. Penguin Books USA, Inc.*,
   No. 21756/90, 1991 N.Y. Misc. LEXIS 225 (Sup. Ct. Kings Cty. Apr. 3,
   1991) ..................................................................................................................5

*Williams v. Citibank, N.A.*,
   565 F. Supp. 2d 523 (S.D.N.Y. 2008) ...........................................................1, 4, 5

*Wolston v. Reader's Digest Association*,
   443 U.S. 157 (1979) ................................................................................................8

*Young v. Greneker Studios, Inc.*,
   26 N.Y.S.2d 357 (Sup. Ct. N.Y. Cty. 1941) ...........................................................3

**Statutes**

New York Civil Rights Law §51 ......................................................................................1

**PRELIMINARY STATEMENT**

Plaintiff's Opposition does not—and cannot—point to any factual allegations that salvage her claims for invasion of privacy or defamation.  As shown in Defendants' Motion,[1] the law simply does not provide the relief Plaintiff seeks.  The invasion of privacy claims fail because *Hustlers* does not use Plaintiff's name, portrait, picture or voice, as required by New York Civil Rights Law §51; is exempted from the statute as a work of fiction; and is protected by the newsworthiness exception.  The defamation claim fails because *Hustlers* is not "of and concerning" Plaintiff, or if it is, it is substantially true, and because Plaintiff has not plausibly alleged fault or damages proximately caused by the movie.

Throughout the Opposition, Plaintiff relies on conclusory allegations that need not be considered and are often directly contradicted by documents properly considered on a motion to dismiss—namely, the movie *Hustlers* and Plaintiff's own plea allocution.  Plaintiff ignores the basic rule that, even on a Rule 12 Motion, "[t]he court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) (citation omitted).[2]

As Plaintiff has not alleged a viable claim and will not be able to as a matter of law, the Amended Complaint should be dismissed with prejudice.

**I.    PLAINTIFF'S SECTION 51 CLAIMS FAIL AS A MATTER OF LAW.**

   **A.    Defendants Do Not Use A "Recognizable Likeness" Of Plaintiff.**

Plaintiff does not dispute that Defendants did not use Barbash's "name, portrait, picture, or voice" in *Hustlers* or their promotional materials.  *See Greene v. Paramount Pictures Corp.*,

---

[1] Capitalized terms not otherwise defined herein shall have the meaning assigned in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Mem."), Dkt. 36.

[2] Plaintiff does not dispute that these documents are properly considered on a motion to dismiss.  *See* Mem. at 2, n.1.

138 F. Supp. 3d 226 (E.D.N.Y. 2015) ("Merely suggesting certain characteristics of the plaintiff, *without literally using* his or her name, portrait, or picture, is not actionable under the statute."), *aff'd*, No. 19-135-cv, 2020 U.S. App. LEXIS 18430, at *7 (2d Cir. June 11, 2020). Instead, Plaintiff argues that *Hustlers* impermissibly uses a "recognizable likeness" of Barbash, under one of two theories: (1) in one scene, Jennifer Lopez's character strikes a pose similar to a photograph of Barbash; or (2) press coverage of the movie connected *Hustlers* to the widely-publicized prosecution that inspired it. Neither theory is supported by the law.

When a Section 51 claim is based on the literal image of someone other than the plaintiff, the relevant question is not "whether some, or even most, people will be reminded of plaintiff when they see" it, but whether viewers "would be likely to think that this was actually [plaintiff's] picture." *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 624 (S.D.N.Y. 1985). This rule comes into play in cases, unlike this one, that involve actual advertisements using celebrity lookalikes to imply a commercial endorsement or deliberately mislead the public. *See Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 726 (S.D.N.Y. 1978) (image that "strongly suggests" face and features of Muhammad Ali, with accompanying text referring to "the Greatest," gave impression that Ali appeared in ad).[3]

Plaintiff's first theory would therefore apply only if *Hustlers* viewers were so confused by the single scene in which Lopez's Ramona strikes a pose similar to Barbash that they were unsure who actually appeared in the film, Lopez or Barbash. *See Onassis*, 472 N.Y.S.2d at 261; Pls. Mem. in Opp. ("Opp.") at 8, Dkt. 41.[4] Plaintiff does not allege that any viewer was

---

[3] *See also Onassis v. Christian Dior-New York, Inc.*, 472 N.Y.S.2d 254, 261 (Sup. Ct. N.Y. Cty. 1984) (lookalike was "intended to[], and did, in fact, convey the idea that it was the plaintiff" appearing in the ad), *aff'd*, 110 A.D.2d 1095 (4th Dep't 1985); *Loftus v. Greenwich Lithographing Co.*, 192 A.D. 251 (1st Dep't 1920) (advertisement copied image of famous actress in her unique costume to suggest she appeared in advertised show).

[4] The Amended Complaint does not provide the referenced photograph. *See* Decl. of Bruno Gioffre, Jr. at Ex. C, Dkt. 40-4; *see also* Schell Decl. Ex. A (film) at 1:41:45, Ex. C (*New York Post* article), Dkts. 37-1, 37-3.

2

ever so confused or that *Hustlers* involves anywhere near the level of mimicry at issue in *Allen*, *Ali*, or *Onassis*.[5]  *See Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 453 (S.D.N.Y. 2008) (personifications "do not fall within the literal meaning of 'portrait' or 'picture'").

Plaintiff's alternate theory that there "*must*" be a recognizable likeness because "the public and media identified and report on Plaintiff being the individual depicted," also fails.  *See* Opp. at 9 (emphasis in original).  This argument is a paradigm of attempts to sue for an unauthorized dramatization of one's life story, which New York courts have repeatedly rejected.  *See Toscani v. Hersey*, 271 A.D. 445, 446 (1st Dep't 1946) (rejecting claim based on the "portrayal of the plaintiff, and an exploitation of his acts, life and personality"); Mem. at 9-12.  In *Onassis*, for example, the Court held that the lookalike defendant could not pretend to be Jackie Onassis in advertisements, but explained that Section 51 does not prohibit actors from "re-enact[ing] events," so she was free to "capitalize on the striking resemblance at parties, television appearances, and dramatic works."  472 N.Y.S.2d at 261-62.  Here, even if Lopez's Ramona bore such a striking resemblance to Plaintiff—which she did not—this case would fall squarely in the permissible second category.

**B.**     *Hustlers* **Is A Work Of Fiction And Thus Not Within Section 51's Reach.**

Works of fiction "do not fall within the narrow scope of the statutory definitions of 'advertising' or 'trade.'"  *See, e.g.*, *Costanza v. Seinfeld*, 279 A.D.2d 255, 255 (1st Dep't 2001); Mem. at 12-13.  Accepting that well-settled rule, as she must, Plaintiff merely argues that *Hustlers* is not a work of fiction.  Opp. at 11.  This characterization and her claim that

---

[5] The other cases cited by Plaintiff do not find a recognizable likeness or involve facts that would support Barbash's theory. *See Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 120-21 (2018) (ruling that digital avatar was not sufficiently recognizable to allow claim); *Young v. Greneker Studios, Inc.*, 26 N.Y.S.2d 357 (Sup. Ct. N.Y. Cty. 1941) (ruling that a manikin could constitute a "portrait or picture," but not ruling whether the manikin at issue constituted a "recognizable likeness" of the plaintiff).

3

Defendants "depicted plaintiff as accurately as possible" are plainly false. *See id*.[6]  *Hustlers* is clearly a work of fiction and repeatedly identified as such.  Schell Decl. Exs. A, C (identifying film as fiction inspired by true events).  Moreover, Plaintiff's suggestion that only "[p]urely fictional works" are protected from Section 51 claims is unsupported by any legal authority. *See, e.g.*, *Hampton v. Guare*, 195 A.D.2d 366 (1st Dep't 1993) (fictional play inspired by real-life "criminal scam" found not actionable because it was a work of fiction).[7]

### C. The Newsworthiness Exception Applies To *Hustlers*.

Plaintiff does not dispute that *Hustlers* discusses subjects of public interest.  *See* Opp. at 12-13.  The "newsworthiness exception" thus must apply unless either (1) there is no "real relationship" between the use of Plaintiff's likeness in the film and its subject matter or (2) the movie is an "advertisement in disguise."  *See Messenger v. Gruner + Jahr Printing & Publ'g*, 208 F.3d 122, 123-24 (2d Cir. 2000) (per curiam).

Plaintiff does not address either of those factors or Defendants' arguments that they are not present here.  Mem. at 14-15.  Instead, she argues that Defendants cannot argue both that the movie is a work of fiction and that it is protected by the newsworthiness exception.  Opp. at 13.  Ironically, she insists that Defendants must take a single, binding position, despite the many contradictions in her own claims, including her argument that *Hustlers* "is more . . . a biopic than a work of fiction."  Opp. at 11.  And the law simply does not require this.  Both the New York Court of Appeals and the U.S. Court of Appeals for the Second Circuit have held

---

[6] It also contradicts Plaintiff's own statements, filed with her Opposition, for example, Plaintiff's expression of dismay that Jennifer Lopez' character Ramona is "actually misrepresenting me."  *See* Gioffre Decl. Ex. C at Dkt. 40-5 p. 3; *see also id.* at Dkt. 40-7 p. 12 ("I was not a stripper. . . . [T]hat's not met[.]").

[7] Plaintiff also contends that Defendants used her "portrait and likeness in connection with their advertisements," Opp. at 12, but she can point only to news coverage published by other parties, Gioffre Decl. Ex. C (Dkt. 40-4 to 40-8).  Defendants provided their promotional materials, referenced in the Amended Complaint, and they plainly *do not* use Plaintiff name, portrait, picture or voice.  Schell Decl. Exs. A, D; *Williams*, 565 F. Supp. 2d at 527 ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies.").

that even *substantially fictionalized* works may be protected by the newsworthiness exception.[8] *See Messenger*, 208 F.3d at 123-24 (citing *Messenger*, 94 N.Y.2d 436).

Plaintiff concedes that *Hustlers* relates the events that inspired it with broad, true-to-life accuracy. *See* Opp. at 11. Whether, as is unquestionably the case, some aspects of the film are fictionalized does not matter. The film addresses issues of public concern, and neither of the factors barring application of the newsworthiness exception here exist. For this and all of the foregoing reasons, the Court should dismiss Plaintiff's invasion of privacy claims.

## II. PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW.

Plaintiff's Opposition fails to identify any factual allegations in her Amended Complaint that state a defamation claim, relying instead on conclusory allegations that are contradicted by the movie itself and by Plaintiff's admissions in her criminal case. *See Williams*, 565 F. Supp. 2d at 527 ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." (citation omitted)).

*First*, Plaintiff's Opposition confuses the legal standard for whether a statement is "of and concerning" a plaintiff with the more general question of whether some viewers understood Plaintiff to be the inspiration for the *Hustlers* character. She contends that press outlets or people who knew her would understand her to be the *inspiration* for Ramona's character, Opp. at 14-15, but the law requires more than mere identification. *Welch v. Penguin Books USA, Inc.*, No. 21756/90, 1991 N.Y. Misc. LEXIS 225, at *7 (Sup. Ct. Kings Cty. Apr. 3, 1991) ("Identification alone is insufficient."); *see* Mem. at 18.

---

[8] *Spahn v. Julian Messner, Inc.*, 18 N.Y.2d 324 (1966), *vacated by Julian Messner, Inc. v. Spahn*, 387 U.S. 239 (1967), cited by Plaintiff, does not hold otherwise. It involved a biography of the plaintiff that was "so infected with fiction, dramatization, or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception." *See Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 446 (2000). Plaintiff's admission that substantial aspects of *Hustlers* are true take this case well outside of *Spahn*.

5

Rather, a plaintiff must plausibly allege that "an average viewer would, taking into account the context in which the remark was uttered, perceive that the speaker was making a factual statement about the individual." *See Kirch v. Liberty Media Corp.*, No. 04 Civ. 667 (NRB), 2004 U.S. Dist. LEXIS 19228, at *19, n.15 (S.D.N.Y. Sep. 24, 2004) (internal marks and citation omitted), *aff'd in relevant part*, 449 F.3d 388 (2d Cir. 2006). Plaintiff has not plausibly alleged this, nor can she. Defendants unequivocally explained to viewers that *Hustlers* was fiction, merely "inspired by a true story," and Plaintiff has not alleged any basis to believe a reasonable viewer would understand the challenged statements in *Hustlers* to be factual assertions about her, as opposed to artistic license taken in a fictional story. *See Feche v. Viacom Int'l, Inc.*, 233 A.D.2d 125, 125 (1st Dep't 1996) (affirming dismissal where an "average viewer" would understand the speaker to be "indulging in hyperbole and protected opinion about the fictional characters that plaintiffs were portraying," rather than making factual assertions about the plaintiff).[9]

***Second***, it is undisputed that a defamation claim cannot proceed where the "gist or substance" of the challenged statements is "substantially true." *See Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) (quoting *Printers II, Inc. v. Prof'ls Publ'g, Inc.*, 784 F.2d 141, 146-47 (2d Cir. 1986)). *See* Mem. at 18-22.[10] Plaintiff takes issue with the portrayals of Ramona developing the "recipe" of drugs or mixing, diluting, and testing the drug cocktail "in her home

---

[9] Plaintiff also contends that this is a jury question, relying on outdated case law from lower courts, *see* Opp. at 14 (citing *Bee Publ'ns, Inc. v. Cheektowaga Times, Inc.*, 107 A.D.2d 382, 385 (4th Dep't 1985)), rather than the Court of Appeals' clear ruling that "the question of whether an allegedly defamatory statement could reasonably be interpreted to be 'of and concerning' a particular plaintiff is a question of law for the courts to decide." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 86-87 (2016). Where, as here, the statements at issue are clearly not "of and concerning" the plaintiff, dismissal is appropriate. *See id.*; Mem. at 17.

[10] Plaintiff does not dispute that the sixth challenged "statement," the alleged portrayal of Barbash as a "cold person," is protected opinion, Mem. at 22-24, and so she has conceded that point. *See AT&T Corp. v. Syniverse Techs., Inc.*, 2014 U.S. Dist. LEXIS 125256, at *24 (S.D.N.Y. Sep. 8, 2014) (ruling that silence on opposition concedes a point).

6

where she lived with her child." Am. Compl. ¶ 44; Schell Decl. Ex. A at 52:30-54:35.[11]  But Plaintiff has admitted in sworn testimony to substantially similar behavior, namely, "intentionally caus[ing] stupor, unconsciousness, and other physical impairment and injury to Victim One by administering to Victim One, without his consent, a drug, substance and preparation capable of producing the same." Ex. G at 6; *see also* Am. Compl. ¶¶ 13, 16.

Despite insisting that the challenged portrayals are more serious, Plaintiff's Opposition makes no effort to explain *why* combining drugs is substantially different from (or more serious than) using them to sedate and steal from patrons.  *See* Mem. 19-22; *Birkenfeld v. UBS AG*, 72 A.D.3d 566 (1st Dep't 2019) (allegation that plaintiff "lied to authorities" was substantially the same as plea to "preparing false forms").

***Third***, Plaintiff fails to identify any factual allegations plausibly suggesting that Defendants acted with the requisite level of fault, regardless of the applicable standard.  *See Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *Frascatore v. Blake*, 344 F. Supp. 3d 481, 497 (S.D.N.Y. 2018) (dismissing claim for failure to plead facts plausibly suggesting gross irresponsibility).

Whether a plaintiff is a limited-purpose public figure turns on "the nature and extent of [the] individual's participation in the particular controversy giving rise to the defamation." *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 352 (1974). Plaintiff is a limited-purpose public figure with regard to this story because she sought out publicity in the adult entertainment industry,[12] was the

---

[11] As noted in the Motion, the Complaint does not allege, and the movie does not show, Ramona using or mixing drugs in front of a child or while a child was in the home; Plaintiff's objection is simply that the scene occurred in a home where a child also lived. Mem. at 5, n.2.

[12] Plaintiff attempts to evade the public figure standard by arguing facts not alleged, *i.e.*, that an adult entertainment host is somehow different than a dancer or that she had avoided publicity prior to the movie, Opp. at 19-20, but she does not explain this distinction, nor does she address the impact of her role as a criminal ring leader.  Defendants also note that Plaintiff's allegations and additional facts argued in Opposition are taken as true solely for the purposes of this Motion.  Defendants reserve the right to dispute these claims, if the case proceeds.

7

ringleader of a widely-publicized criminal conspiracy,[13] and was the subject of press reports about that conspiracy and resulting prosecution for years. *See, e.g.*, Am. Compl. ¶¶ 13, 16-17, 43; Ex. B.  Indeed, Plaintiff's claims rely on the theory that she is *so recognizable* that Jennifer Lopez, undoubtedly a public figure, relied on *her* to gain additional publicity for the film. *Id.* at ¶ 17 ("Defendants utilized the likeness and character of Plaintiff … to ensure the public *knew* that the character played by JLO was, in-fact [sic], Ms. Barbash"); *see also id.* at ¶¶ 20-22.

Even if Plaintiff were not a limited purpose public figure, she would still have to allege facts plausibly suggesting that Defendants "acted in a grossly irresponsible manner" because the movie unquestionably touches on matters of public concern. *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199 (1975) (defining gross irresponsibility as "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties"); *Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10, 15 (2nd Dep't 1985) ("a private person's alleged criminal conduct and the operation of the criminal justice system with respect to the disposition of the charges … are matters of legitimate public concern"); *see also*, *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 236 (E.D.N.Y. 2015) (applying gross irresponsibility standard to claims based on *The Wolf of Wall Street*, which "unquestionably touche[d] on a matter warranting public exposition").[14]

Under either standard, Plaintiff's "[t]hreadbare recitals of the elements of a cause of

---

[13] Plaintiff argues that commission of a crime does not automatically make one a limited-purpose public figure, Opp. at 21, but here, Plaintiff does not dispute that she was the leader of a widely-reported criminal conspiracy.  This, combined with Plaintiff's career in and subsequent attempts to capitalize on the press surrounding her prosecution, is hardly a situation in which she "was dragged unwillingly into the controversy." *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 166 (1979); *see* Opp. at 20 (relying on same).

[14] The *Greene* court found on a motion to dismiss that, at a minimum, the gross irresponsibility standard applied. *Id.*  At summary judgment, the plaintiff, who served as a director of a brokerage firm involved in various criminal activities, conceded that the actual malice standard applied.  *See Greene*, 340 F. Supp. 3d 161, 169 (E.D.N.Y. 2018), *aff'd*, 2020 U.S. App. LEXIS 18430, at *7 (2d Cir. June 11, 2020).

action" are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Am. Compl. ¶¶ 43, 47-48 (alleging that Defendants acted "in a grossly irresponsible manner" or "with malice, gross and/or reckless disregard as to the truth or falsity" of the challenged statements").[15] Plaintiff does not support her conclusory assertions with any factual allegations, much less facts that would suggest Defendants (or as required, any individual affiliated with any Defendant) published the challenged "portrayals" with actual knowledge that they were false or, under the lesser standard, "without due consideration for the standard of information gathering and dissemination ordinarily followed." *See Chapadeau*, 38 N.Y.2d at 196. To the contrary, Defendants produced a fictional movie, "inspired by" a concededly true story, and even then, the challenged portrayals—that Ramona mixed drugs in her apartment—are reasonable interpretations of that story.

**Fourth**, regarding causation, the Opposition insists that Plaintiff's conclusory allegations are sufficient, rather than pointing to any specific factual allegations that would support her contention that "the statements contained in 'Hustlers' have permanently damaged her reputation in her personal and professional community." Opp. at 22-23; *see* Am. Compl. ¶¶ 50-51. The Opposition also ignores Defendant's broader point that there is no plausible reason to believe the alleged falsities in a fictional movie, *i.e.*, Ramona's involvement in mixing the drug cocktail, would be the proximate cause of any harm to Plaintiff's reputation, rather than her admitted participation in a criminal conspiracy and felony plea to using such drugs to sedate and steal from her victims. Mem. at 24-25; Schell Decl. Ex. G.

---

[15] Plaintiff identifies only two federal court cases decided after *Iqbal* and *Twombly*, where claims survived motions to dismiss, and in both, unlike here, the plaintiff had alleged facts plausibly suggesting gross irresponsibility. *See Mitre Sports Int'l Ltd. v. HBO, Inc.*, 22 F. Supp. 3d 240, 255 (S.D.N.Y. 2014) (plaintiff alleged that defendants were unable to support the challenged allegations and instead fabricated scenes in documentary film); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (plaintiff alleged that defendant completely fabricated allegation of rape).

Instead, Barbash argues that, because Defendants' initial recitation of the defamation standard did not specifically mention causation, she is not required to allege or prove it. *See* Opp. at 22. This is plainly incorrect. Defendants' Motion demonstrated—and Barbash has not rebutted—that a defamation plaintiff "must allege and prove that her claimed damages are 'the direct and well-connected result of a defamatory statement at issue.'" Mem. at 24-25 (quoting *Wilcox v. Newark Valley Cent. Sch. Dist.*, 129 A.D.3d 1230, 1233 (3rd Dep't 2015)); *see also In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 97 (2d Cir. 2017) ("Causation in fact is, of course, a necessary element of any claim for relief[.]" (citation omitted)).

For each of these independent reasons, Plaintiff's defamation claim should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice, award their costs and fees, and grant such other and further relief as the Court finds just.

| | |
|---|---|
| Dated: July 10, 2020<br>New York, New York | BALLARD SPAHR LLP<br><br>*/s/ Jacquelyn N. Schell*<br>Jacquelyn N. Schell<br>1675 Broadway, 19th Floor<br>New York, NY  10019-5820<br>Telephone: 212.223.0200<br>Facsimile: 212.223.1942<br><br>Louis P. Petrich (*pro hac vice application pending*)<br>Elizabeth L. Schilken (*pro hac vice application pending*)<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067-2909<br>Telephone:  424.204.4400<br>Facsimile:   424.204.4350 |