```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
SAMANTHA BARBASH,                      :
                                       :
                        Plaintiff,     :
                                       :
            -v-                        :
                                       :    20cv123 (DLC)
STX FINANCING, LLC (dba STX            :
ENTERTAINMENT), a Delaware limited     :    OPINION AND
liability company; GLORIA SANCHEZ      :       ORDER
PRODUCTIONS, INC., a California        :
corporation; NUYORICAN PRODUCTIONS,    :
INC., a California corporation; POLE   :
SISTERS, LLC, a California limited     :
liability company; and JOHN and JANE   :
DOES 1-10,                             :
                                       :
                        Defendants.    :
                                       :
-------------------------------------- X
```

APPEARANCES

For plaintiff Samantha Barbash:

Bruno V. Gioffre, Jr.
Stephen A Florek III
Law Office of Bruno V. Gioffre, Jr.
2 Westchester Park Drive
Suite 205
White Plains, NY 10604

For defendants STX Financing, LLC (dba STX Entertainment); Gloria Sanchez Productions, Inc.; Nuyorican Productions, Inc.; and Pole Sisters, LLC:

Jacquelyn N. Schell
Ballard Spahr LLP
1675 Broadway
19th Floor
New York, NY 10019-5820

DENISE COTE, District Judge:

Plaintiff Samantha Barbash ("Barbash") has sued producers and distributors of the motion picture Hustlers for invasion of privacy and defamation. For the reasons stated below, the defendants' motion to dismiss this action is granted.

## Background

The following facts are taken from Barbash's amended complaint ("FAC"), documents integral to it, or documents properly considered on a motion to dismiss. The facts alleged in the FAC are taken to be true for purposes of this motion. Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018).

Barbash worked as an adult entertainment host at Score's Gentleman's Club and Hustlers Club in Manhattan. Barbash pled guilty in 2015 to conspiracy, assault, and grand larceny in connection with that work and was sentenced to a five-year term of probation.

In December 2015, New York Magazine published "The Hustlers at Scores" by Jessica Pressler ("Pressler Article"), which described the scheme to which Barbash pleaded guilty. The Pressler Article reports that Barbash "had come up with the innovation that was making her rich: a special drink spiked with MDMA and ketamine" that was given to the scheme's victims.

While one of Barbash's co-conspirators appears to have been the principal source of information for the article and is quoted extensively, the author also reports on a conversation with Barbash and directly quotes Barbash.

Inspired by the Pressler Article, STX Financing, LLC, Gloria Sanchez Productions, Inc., Nuyorican Productions, Inc., and Pole Sisters LLC ("Defendants") produced, developed, and distributed the motion picture Hustlers.  Hustlers allegedly portrays Barbash, played by film and music star Jennifer Lopez, as the ringleader of a group of adult dancers who drugged their patrons and stole large sums of money from them while they were incapacitated.  The Defendants initially sought Barbash's consent to the production of the film, but Barbash refused to give her consent.  The film was released in theaters on September 13, 2019, and will be distributed worldwide through home entertainment channels.  The FAC alleges that the Defendants have used Barbash's identity, likeness, and character in the film and in marketing materials.

After the release of the film, Barbash and her attorney gave two interviews to Vanity Fair: "'I Wasn't That Impressed': Hustlers' Real-Life Ramona Reviews the Film" on September 17, 2019, and "Hustlers: Jennifer Lopez's Real-Life Inspiration Says She Was Only Offered $6,000" on January 10, 2020.  In addition,

3

Barbash wrote a memoir, Underscore: Breaking My Silence, that was published on April 12, 2020.

Barbash filed this action on January 7, 2020. On April 15, the Defendants moved to dismiss the complaint. On April 16, the Court allowed Barbash to oppose the motion or instead to file an amended complaint by May 8. The Order noted that it would be unlikely that the plaintiff would be given a further opportunity to amend.

On May 8, Barbash filed the FAC. She asserts that she pleaded guilty to conspiracy, assault, and grand larceny in 2017.[1] In the FAC, Barbash advances two claims. First, she asserts that the Defendants' unauthorized use of her personality for advertising, trade, and commercial purposes violated her right to privacy under N.Y. Civil Rights Law ("NYCRL") §§ 50 and 51. Second, she claims that the Defendants defamed her in six statements and scenes in the film. Barbash seeks both damages and injunctive relief.

On May 29, the Defendants moved to dismiss the FAC in its entirety. The Defendants' motion to dismiss became fully submitted on July 13.

---

[1] The transcript of Barbash's plea allocution, however, indicates that she pleaded guilty in 2015.

4

**Discussion**

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor."  Zibelman, 906 F.3d at 48-49.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint must do more than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In determining the adequacy of a complaint, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  In addition, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the

proceeding to one for summary judgment." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (citation omitted). A court may also take judicial notice of facts that are publicly available if their accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b); Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016); Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

The parties agree that the Court may take judicial notice of the transcript of Barbash's guilty plea even though Barbash did not attach it as an exhibit to the FAC. The FAC refers to the plea and contains descriptions of her allocution. The Defendants have submitted it as an exhibit to their motion to dismiss and rely on it in making this motion.

Additionally, the court may consider Barbash's interviews with Vanity Fair and the existence of her published memoir in determining the adequacy of the FAC. Both the interviews and the memoir are "matters of public record." Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012).

I. New York Civil Rights Law §§ 50 and 51

The Defendants have moved to dismiss Barbash's claim for invasion of her privacy. Under § 50 of the NYCRL, "[a] person, firm or corporation that uses for advertising purposes, or for

the purposes of trade, the name, portrait or picture of any living person without . . . consent . . . is guilty of a misdemeanor." NYCRL § 50. Section 51 provides a private right of action for "[a]ny person whose name, portrait, picture or voice" is used in violation of § 50. Id. § 51.

The central issue in resolving Barbash's statutory right of privacy claim is whether §§ 50 and 51 protect an individual's "likeness and character" in addition to her "name, portrait, picture or voice." NYCRL § 51. Unlike other jurisdictions, New York "does not recognize a common-law right of privacy and provides a statutory remedy only for the commercial use of a living person's name, portrait, picture, or voice without their consent." Blitzer v. Potter, No. 03 CIV. 6124 (DLC), 2005 WL 1107064, at *16 (S.D.N.Y. May 6, 2005). The legislative intent underlying §§ 50 and 51 "underscore[s] that the statute is to be narrowly construed and 'strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person.'" Messenger v. Gruner Jahr Printing & Pub., 208 F.3d 122, 125-26 (2d Cir. 2000) (quoting Finger v. Omni Publications Int'l, 77 N.Y.2d 138, 141 (1990)).

The FAC does not allege that Hustlers or its marketing materials use Barbash's "name, portrait, picture, or voice." It only alleges that the Defendants exploited her "likeness and

7

character" in creating and marketing the film.  This is insufficient to plead a violation of § 51.  Accordingly, Barbash's right of privacy claim is dismissed.

II. Defamation

The Defendants have moved to dismiss the defamation claim on the grounds that the identified statements do not concern the plaintiff, are substantially true, and that the FAC does not plead a claim on behalf of a plaintiff who is properly categorized as a limited-purpose public person.  To plead a defamation claim under New York law, a plaintiff must allege: "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability."  Chau v. Lewis, 771 F.3d 118, 126-27 (2d Cir. 2014) (citation omitted) (applying New York law).[2]

A. Concerning the Plaintiff

The test for whether an allegedly defamatory statement concerns the plaintiff for purposes of a defamation claim is whether "'[t]he reading public acquainted with the parties and

---

[2] The plaintiff is a New York State resident.  The parties' briefs assume that New York law controls.  This "implied consent . . . is sufficient to establish choice of law."  Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 296 (2d Cir. 2000) (citation omitted).

the subject' would recognize the plaintiff as a person to whom the statement refers." Elias v. Rolling Stone LLC, 872 F.3d 97, 104-05 (2d Cir. 2017) (quoting Carlucci v. Poughkeepsie Newspapers, Inc., 57 N.Y.2d 883, 885 (1982)). "It is not necessary that the world should understand the libel; it is sufficient if those who know the plaintiff can make out that she is the person meant." Id. at 105 (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

The FAC alleges that the Defendants "engaged in a systematic effort to make it well-known that JLO was playing" her and "promoted the film by deliberately discussing the real-life events that transpired, . . . Barbash's . . . plea information, legal proceedings and other information that made Barbash's identity instantly connected to the film." Accepting these facts as true, the FAC adequately pleads that the statements concern Barbash.

B.  Falsity

To state a claim for defamation, Barbash must also allege that the statements that concern her are false. "'Substantial truth' is the standard by which New York law, and the law of most other jurisdictions, determines an allegedly defamatory statement to be true or false." Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC,

9

864 F.3d 236, 242 (2d Cir. 2017) (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991)).  Accordingly, "[t]o satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.'"  Id. (quoting Franklin v. Daily Holdings, Inc., 21 N.Y.S.3d 6, 12 (1st Dep't 2015)).

"[I]n defamation law, as in life, determinations of fact and fiction are not zero-sum.  In New York, a statement need not be completely true, but can be substantially true, as when the overall 'gist or substance of the challenged statement' is true."  Tolbert v. Smith, 790 F.3d 427, 440 (2d Cir. 2015) (quoting Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014)).  "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced."  Tannerite, 864 F.3d at 242 (quoting Franklin, 21 N.Y.S.3d at 12).

The FAC identifies six allegedly defamatory statements or scenes in the film.  Five of the statements concern the use of drugs as part of the scheme to victimize patrons.  The sixth concerns the personality of the character portrayed in the film.  The six statements are:

> (1)   "the statement that she concocted and developed the recipe of the illicit drugs utilized in furtherance of the crimes depicted,"

    (2)    "the portrayal of her manufacturing the illegal substances in her home where she lived with her child,"

    (3)    "the portrayal of her in possession of illegal drugs,"

    (4)    "the portrayal of her using illegal drugs,"

    (5)    "the portrayal of her drugging individuals without their knowledge or consent," and

    (6)    "the portrayal of her as a cold individual indifferent to the well-being health, and life of others."

The FAC only succeeds in alleging that the first, second, and fourth statements are false.[3]

In 2017, Barbash pled guilty to participating in a conspiracy in which she and her confederates provided their victims with illegal drugs in order to gain control of and use their credit cards. She pleaded guilty to "intentionally caus[ing] stupor, unconsciousness, and other physical impairment and injury to Victim One by administering to Victim One, without his consent, a drug, substance and preparation capable of producing the same." That she also possessed the drugs "is an inference well supported by the record." Fleischer v. NYP Holdings, Inc., 961 N.Y.S.2d 393, 393 (1st Dep't 2013).

---

[3] It is assumed for purposes of this Opinion, without deciding the issue, that the statement in the Pressler Article that Barbash had concocted the drink given to victims does not render the first and second statements substantially true.

Accordingly, the third and fifth allegedly defamatory statements are "all completely or substantially true." Chau v. Lewis, 771 F.3d 118, 130 (2d Cir. 2014). Barbash has thus failed to plead that the third and fifth statements are false, and the statements may not render the Defendants liable for defamation under New York law.

The transcript of Barbash's plea does not suggest, however, that she developed, manufactured, or personally used illegal drugs. The facts set forth in the FAC are sufficient to plead that the statements that she performed these acts may "have [had] a different effect on the mind" of the viewer than her admissions to other criminality in her plea of guilty. Tannerite, 864 F.3d at 242.

In support of their argument that these statements were substantially true, the Defendants rely on two cases, each of which is distinguishable. In Fleischer v. NYP Holdings, Inc., 961 N.Y.S.2d 393, 394-95 (1st Dep't 2013), the court dismissed the defamation claim as a statement of opinion. In Birkenfeld v. UBS AG, 100 N.Y.S.3d 23 (1st Dep't 2019), the plea allocution and alleged defamatory statement were nearly identical. The court dismissed a defamation claim based on a published statement that the plaintiff had been convicted of having lied

12

to U.S. authorities, where the plaintiff's plea included the admission that he had prepared false IRS forms.  Id. at 24.

The Defendants' motion to dismiss the claim that relies on the sixth and final statement in the FAC, however, is granted. The FAC fails to plead falsity with respect to the description of Barbash as a cold individual who was indifferent to the health of others.  To the extent this is a statement, it is a statement of opinion.  As a statement of opinion, the portrayal cannot form the basis of a defamation claim.  "[E]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation."  Davis v. Boeheim, 24 N.Y.3d 262, 269 (2014) (citation omitted).

To determine whether a statement constitutes a statement of a fact or an opinion, a court must ask:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . [to] readers or listeners that what is being read or heard is likely to be opinion, not fact.

Id. at 270 (citation omitted).  Applying this test, the FAC does not adequately plead that the characterization is an assertion of fact.  The alleged portrayal has no precise meaning, cannot

13

readily be measured for its truth or falsity, and would be understood by viewers of the film to be an opinion and not a statement of fact.

C.   Limited-Purpose Public Figure

Finally, the Defendants argue that Barbash was, at minimum, a limited-purpose public figure, which requires the FAC to plead actual malice.  They are correct.  Because the FAC fails to plead actual malice, the defamation claim must be dismissed in its entirety.

In order to establish that a person is a limited-purpose public figure, a defendant must show the plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

Lerman v. Flynt Distrib. Co., 745 F.2d 123, 136-37 (2d Cir. 1984).

"Limited-purpose public figures who seek damages for defamatory statements must show that the statements were made with 'actual malice' -- that is, with knowledge that the statements were false or with reckless disregard as to their falsity."  Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015).  The term actual malice is "a term of art denoting deliberate or

14

reckless falsification." Masson v. New Yorker Magazine, 501 U.S. 496, 499 (1991). Fed. R. Civ. P. 8 "requires a limited-purpose public figure to plead in a plausible way that defendants acted with actual malice." Biro, 807 F.3d at 542. A defendant's "[m]ere negligence does not suffice" to plead actual malice. Masson, 501 U.S. at 510. "Although actual malice is subjective, a court typically will infer actual malice from objective facts." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 183 (2d Cir. 2000) (citation omitted). See also Biro, 807 F.3d at 545.

The limited-purpose public figure doctrine and its actual malice standard are rooted in the First Amendment. They aim to "assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." Gertz v. Welch, 418 U.S. 323, 342 (1974) (citation omitted). "This breathing space is provided by a constitutional rule that allows public figures to recover for libel or defamation only when they can prove both that the statement was false and that the statement was made with the requisite level of culpability." Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 52 (1988). Some degree of falsehood is "inevitable in free debate, and a rule that would impose strict liability on a publisher for false factual assertions would have an undoubted chilling effect on speech

15

relating to public figures that does have constitutional value." Id. (citation omitted).

Barbash is a limited-purpose public figure.  She entered the public arena through her plea of guilty in open court in 2015 to the crimes that are at the heart of the film portrayal of her and through her public statements about that plea.  She gave at least two interviews to reporters and published her own memoir.  As described in the 2015 Pressler Article in New York Magazine, Barbash spoke with the author and described her role in the scheme.[4]  After the movie was released in 2019, Barbash gave an interview to Vanity Fair in 2019, and her attorney gave an additional interview to Vanity Fair in 2020.  The articles both included photographic portraits of Barbash.  In 2020, Barbash published a memoir.  This cooperation with reporters and publication of her own book about these events make it appropriate to treat Barbash as a limited-purpose public figure.

---

[4] The FAC does not deny that Barbash was a source for the Pressler Article.  Indeed, it explains that the Pressler Article "is based on the real life events of Ms. Barbash" and inspired Hustlers.  In opposition to this motion, Barbash does not deny that she spoke with Pressler or that Pressler accurately related her conversation with Pressler.  Barbash's opposition memorandum explains, however, that she "vehemently denies ever doing an interview with" Pressler.  This denial in her opposition brief, even if properly considered on this motion, does not cure the FAC's failure to plead malice.

16

Barbash argues that she is not a limited-purpose public figure because she was unwillingly dragged into the public arena by the Pressler Article and Hustlers. She claims that her subsequent interviews with Vanity Fair and published memoir were part of an "attempt to make the best of it to set the record straight." Barbash was of course entitled to give the public her own version of the events at issue here, but that engagement with the public rendered her a limited-purpose public figure.

Barbash's reliance on Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157 (1979), does not alter that determination. The plaintiff in Wolston "succeeded for the most part in returning to the private life he had led" once his prosecution and sentencing had concluded. Id. at 163. Unlike Barbash, he "never discussed [his case] with the press and limited his involvement to that necessary to defend himself" in court. Id. at 167. Thus, the Court concluded that "[a]ny inference that [the plaintiff] 'assumed the risk' of public scrutiny . . . assuredly is negated by his conscious efforts to regain anonymity during the succeeding 16 years." Id. at 171.

The FAC does not succeed in pleading that the Defendants acted with actual malice, that is, with at least reckless disregard for the truth of the statements that Barbash developed, manufactured, and used illegal drugs. Barbash pled

17

guilty to drugging individuals without their consent. The Pressler Article reports that Barbash concocted the recipe for the mixture of illegal drugs that rendered the scheme's victims vulnerable to the fraud. Nor does the FAC plead that the Defendants acted with malice in asserting that Barbash herself used drugs. That assertion is the least offensive of all of the statements of which Barbash complains and is naturally connected to the scheme to which Barbash pleaded guilty and which she discussed with journalists.

## Conclusion

The Defendants' May 29, 2020 motion to dismiss is granted. The Clerk of Court shall enter judgment for the Defendants and close the case.

Dated: New York, New York
November 10, 2020

```
                         _____
                              DENISE COTE
                         United States District Judge
```